IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES, : | |
| : | CRIMINAL ACTION |
| v.   : | |
| : | No. 06-719-3 |
| TROY WILEY : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                  **May 6, 2009**

    Defendant Troy Wiley is charged with participating in a large-scale drug trafficking organization located in and around Chester, Pennsylvania. A warrant authorized the search of Wiley's residence in the Elms Apartments at 1703 Coventry Lane in Newark, Delaware. The search uncovered $8,000 in cash and a scale. Wiley filed a motion to suppress the physical evidence obtained from the search. The motion, which contains no legal citations and is not accompanied by a brief or legal memorandum, despite the clear directive of Local Rule of Criminal Procedure 12.1, seeks to suppress any and all physical evidence, based on a number of reasons, including lack of probable cause. Although the Government does not intend to offer the evidence obtained from Wiley's residence in its case-in-chief, it opposes the motion because the evidence may become relevant in light of the defense offered at trial. (Gov't's Resp. to Wiley's Mot. to Suppress at 2.) For the reasons below, the Court finds that probable cause existed and denies the motion to suppress.

**I.      FACTUAL BACKGROUND**

    The Government contends that Wiley is a member of a drug trafficking ring centered in Chester, Pennsylvania. The leader of this ring, co-defendant Edward "Pooh" Kaplan, allegedly obtained cocaine from New York City, which he then distributed to members of the conspiracy for

further distribution and eventual sale. Specifically, the Second Superseding Indictment accuses Wiley and others of knowingly and intentionally distributing five kilograms or more of cocaine. Wiley purportedly obtained cocaine from Donald Johnson and then sold the cocaine to distributors in Chester and elsewhere. The Second Superseding Indictment chronicles numerous phone calls and meetings among members of the conspiracy as they carried out their drug-related activities. For example, in June of 2006, Wiley asked Johnson about the price of seventy grams of cocaine and complained about the quality of the cocaine. (Sec. Superseding Indictment ¶¶ 105-06.) In August of 2006, Johnson arranged to deliver 250 grams of cocaine to Wiley for $5,500. (*Id*. ¶¶ 167-170.)

## II.   STANDARD OF REVIEW

Probable cause exists when, viewing the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause may be inferred by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]." *United States v. Jones*, 994 F.2d 1051, 1056. Here, a judicial officer has already made a finding of probable cause. Because a magistrate judge's initial determination is entitled to "great deference" and must be upheld provided a "substantial basis" exists for finding probable cause, this Court's role is limited. *Id*. at 236; *see also United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Jones*, 994 F.2d at 1057-58. In reviewing the probable cause determination, this Court is bound by the information included in the warrant application. *Id*. at 1055. Furthermore, "[t]he supporting affidavit must be

read in its entirety and in a commonsense and nontechnical manner." *Conley*, 4 F.3d at 1206 (citing *Gates*, 462 U.S. at 230-31).

## III.   DISCUSSION

### A.   Affidavit Background

The affidavit in support of probable cause relied on the sworn statements of two law enforcement officials, Detective Dewey Stout and Probation and Parole Officer Craig Watson. At the time the affidavit was attested to, Stout was a Delaware State Trooper assigned to the Northern Delaware Drug Task Force. (Gov't's Resp. Ex. B [Probable Cause Affidavit] ¶ 1.) He had been a police officer for ten years and completed training in conducting drug investigations; he had also made over two hundred drug arrests. (*Id*.) Watson was the Supervisor of the Serious Criminal Offender Unit and a former member of the F.B.I./Fugitive Task Force. (*Id*. ¶ 2.) He had spent twelve years as a Probation and Parole Officer in Delaware and received training in drug investigations. (*Id*.)

In March of 2008, Stout met with a confidential source who identified Wiley as a high-level cocaine dealer. (Probable Cause Aff. ¶ 3.) The confidential source confirmed Wiley's identity by viewing a photo of him and advised that Wiley often drove a white Cadillac when delivering drugs. (*Id*. ¶ 4.) The confidential source phoned Wiley to arrange a controlled buy. (*Id*. ¶ 5.) On the day of the buy, surveillance officers spotted a man who looked like Wiley driving a blue Buick. (*Id*. ¶ 6.) A registration check revealed that the Buick belonged to Stephanie Wiley of Newark, Delaware. (*Id*. ¶ 7.) The Buick stopped in front of the confidential source and the confidential source called Stout and told him that Wiley was indeed driving the Buick. (*Id*. ¶¶ 8-9.) An unknown African-

American male in a camouflage coat exited the Buick and conducted a hand-to-hand transaction with the confidential source. (*Id.* ¶ 10.) The unknown male then entered the passenger side of the Buick and law enforcement followed the vehicle. (*Id.* ¶¶ 10, 12.) Meanwhile, the confidential source turned over a bag of powder – which field tested positive for cocaine – and told Stout that the unknown male in camouflage brought the cocaine to him from Wiley while Wiley remained in the vehicle. (*Id.* ¶ 13.) Stout conducted an address check of Wiley and learned that he was being supervised by the Department of Probation and Parole. (*Id.* ¶¶ 17-18.) Stout also learned that Wiley had a prior drug arrest and conviction for cocaine trafficking. (*Id.* ¶¶ 19-20.)

Stout contacted Watson, who confirmed that Wiley was being supervised. (*Id.* ¶ 21.) Watson also stated that Wiley claimed his address was 1703 Coventry Lane, Newark, Delaware (the Elms Apartments), a fact that law enforcement later confirmed. (*Id.* ¶ 21.) Stout subsequently learned that Wiley paid the electrical bills for that address. (*Id.* ¶ 32.) In April of 2008, Stout was provided with a copy of a federal arrest warrant for Wiley based on an indictment for conspiracy to distribute cocaine. (*Id.* ¶ 33.)

Stout and Watson stated in their affidavit that their training, experience and participation in prior drug investigations led them to conclude that drug traffickers stash evidence of drug-related activities – including contraband, proceeds of drug sales and records of transactions – in their residences. (Probable Cause Aff. at 11-12.) Based on the information in the affidavit, a search warrant issued, allowing police to search Wiley's second floor apartment at the Elms Apartments. Police then searched the apartment.

    **B.**    **Probable Cause**

The warrant in this case was amply supported by probable cause. The affidavit established

that Wiley resided at 1703 Coventry Lane in Newark, Delaware, that he was involved in a wide-ranging drug trafficking conspiracy, and that he participated in a controlled drug buy with a confidential source. The affidavit's lack of direct evidence linking Wiley's residence to drug-related activity is not fatal to the probable cause inquiry. *See United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (noting that "direct evidence linking the residence to criminal activity is not required to establish probable cause"). "Instead, probable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested." *Id*.

The totality of the circumstances allows probable cause to be inferred from the type of crime, the nature of the items sought, and where a suspect might conceal evidence of the crimes. *See Jones*, 994 F.2d at 1056. The Third Circuit has acknowledged that drug dealers are likely to conceal evidence of their crimes in their homes. *See United States v. Whitner*, 219 F.3d 289, 297-98 (3d Cir. 2000).

The affidavit provides ample reason to believe that Wiley was involved in a long-term drug conspiracy that spanned multiple states and involved significant quantities of cocaine. Common sense dictates that Wiley did not keep massive amounts of cocaine on his person at all times and thus needed a location to store his supply. The affidavit also sets forth a substantial basis to believe that Wiley lived at the Elms Apartments. Experience teaches that the homes of drug dealers often contain evidence of drug-related crimes, a fact that Stout and Watson attested to in the affidavit. *See United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) ("probable cause existed to arrest him on drug-related charges . . . again making it more likely that drug-related evidence would be stored at his home"). It is therefore reasonable to believe that Wiley would attempt to conceal evidence of

his drug activities in his residence.

### B.     Good Faith Exception

In the alternative, the Court holds that the good faith exception applies in this case. Under the good faith exception, the fact that a magistrate did not have a substantial basis for a probable cause finding is by itself insufficient to warrant exclusion. *See United States v. Leon*, 468 U.S. 897, 926 (1984). If an officer executes a warrant in objectively reasonable reliance on the warrant's authority, exclusion is inappropriate. *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). "The test for whether the good faith exception applies is 'whether a reasonable well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999) (quoting *Leon*, 468 U.S. at 922 n.23). Although the existence of a warrant generally suffices to show that the search was conducted in good faith, the Third Circuit has identified four situations in which the officer's reliance would be objectively unreasonable: (1) if the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) if the magistrate abandoned his judicial role and failed to execute his duties in a neutral and detached manner; (3) if the warrant was based on a probable cause affidavit so lacking in indicia of probable cause as to render an official's belief in its existence entirely unreasonable; or (4) if the warrant was facially deficient because it did not state the place to be searched or the items to be seized with any specificity. *Hodge*, 246 F.3d at 308.

Defendant's motion raises only generic and unsubstantiated objections to the officers' good faith reliance on the warrant. Upon review of the search warrant, the Court concludes that it was executed in good faith and that none of the exceptions that could vitiate the officers' reliance on the warrant apply here.

## IV.    CONCLUSION

The police had probable cause to search Wiley's residence and acted in good faith reliance on a properly issued search warrant.  Accordingly, Wiley's motion to suppress is denied.  An appropriate Order will be docketed with this opinion.